PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MICHAEL NARJES, | ) |
| Plaintiff, | ) CASE NO. 5:17CV739 |
| | ) |
| | ) JUDGE BENITA Y. PEARSON |
| v. | ) |
| | ) |
| ABSOLUTE HEALTH SERVICES, INC., *et al.*, | ) |
| | ) |
| | ) **MEMORANDUM OF OPINION AND** |
| Defendants. | ) **ORDER** [Resolving ECF No. 29] |

Pending before the Court is Defendant Absolute Pharmacy, Inc.'s Motion for Summary Judgment. ECF No. 29. Plaintiff Michael Narjes has filed a response in opposition. ECF No. 40. Defendant replied. ECF No. 41. For the reasons that follow, the motion is granted.

## I. Stipulated Facts and Background

### A. Stipulated Facts[1]

1. Narjes drove his own automobile, and the automobile did not include any markings identifying Absolute Pharmacy, Inc. ("Absolute") or Trax Management Services, Inc. ("Trax").

2. There is a Master Transportation Agreement between Absolute and Trax which provides, *inter alia*, "[Trax] shall remain an independent contractor, and nothing herein shall be construed to create a partnership or joint venture between [Absolute] and [Trax]. Each party shall be responsible for wages, hours and conditions of employment of its personnel during the

---

[1] *See* Joint Proposed Stipulation of Facts (ECF No. 30) and Joint Undisputed Fact Stipulation Pursuant to ECF #26 (ECF No. 43).

(5:17CV739)

term of an under this Agreement. Nothing herein shall be construed as implying that employees of one party are employees of the other."

    3. Narjes received his compensation *via* direct deposit.

    4. The parties stipulate to the authenticity of the documents produced by each party in discovery, without waiving their rights to object to the admissibility of any produced documents based on relevancy or otherwise at trial or by motion in this matter.

### B. Background

Defendant Absolute is an institutional pharmacy, which contracts with businesses, such as nursing homes and other similar health care facilities, to provide medication for the facilities' residents. ECF No. 29 at PageID#: 177 78. Absolute entered into a Master Transportation Agreement (the "MTA") with Defendant Trax, a delivery business that provides delivery services for a range of businesses, including pharmaceutical, nursing home, and and assisted living. ECF No. 29-9. The MTA provides that Absolute will use Trax to deliver its medications contained in "sealed or securely wrapped packages" to Absolute's customers. *Id.* at PageID#: 372.

Plaintiff Michael Narjes was hired by Trax, as an independent contractor, and worked as a courier driver, tasked with the pick up and delivery of medications to Absolute's customers. ECF Nos. 29 at PageID#: 181 83; 40-1 at PageID#: 1190 92. Plaintiff was given a key card to access Absolute's staging room in its North Canton, Ohio facility for the purpose of picking up and dropping off the medications that were placed in plastic "totes." ECF No. 29 at PageID#:178, 182. When delivering the medications to Absolute's customers, Plaintiff drove his own automobile, and the automobile did not include any markings identifying Absolute or Trax. ECF No. 30 at PageID#: 384. Plaintiff was later terminated from his employment as a courier

2

(5:17CV739)

driver on grounds that, he did not follow proper procedure in delivering medication to an Absolute customer. ECF No. 29 at PageID#: 185 86.

In bringing this action, Plaintiff asserts that Defendants Absolute and Trax were "joint employers" under the Fair Labor Standards Act ("FLSA"), and have unlawfully misclassified him as an independent contractor when, in fact, he is Defendants' employee. ECF No. 1. Plaintiff contends this misclassification constitutes violations of the FLSA, 29 U.S.C. §§ 201 219, as well as the Ohio Fair Minimum Wage Amendment ("OMFWA"), Ohio Constitution Art. II, §34a, and the Ohio overtime compensation statute, Ohio Rev. Code § 4111.03, and has deprived him of minimum wages and overtime pay to which he is entitled. *Id.*

Defendant Absolute moves to summarily dismiss Plaintiff's claims against it, arguing that it was never an employer of Plaintiff. ECF No. 29.

## II. Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." *Guarino v. Brookfield Twp. Trustees.*, 980 F.2d 399, 403 (6th Cir. 1992).

(5:17CV739)

Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of genuine dispute. An opposing party may not simply rely on its pleadings. Rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). The non-moving party must, to defeat the motion, "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

The United States Supreme Court, in deciding *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), stated that in order for a motion for summary judgment to be granted, there must be no genuine issue of material fact. *Id.* at 248. The existence of some mere factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A fact is "material" only if its resolution will affect the outcome of the lawsuit. In determining whether a factual issue is "genuine," the court must decide whether the evidence is such that reasonable jurors could find that the non-moving party is entitled to a verdict. *Id.* Summary judgment "will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). The existence of a

4

(5:17CV739)

mere scintilla of evidence in support of the non-moving party's position ordinarily will not be sufficient to defeat a motion for summary judgment. *Id.*

### III. Analysis

At issue is whether Absolute is a joint employer of Plaintiff. Under the FLSA, two or more entities can be joint employers and responsible for complying with the Act. *See* 29 C.F.R. § 791.2(a). The issue of joint employment for the FLSA "depends []on all facts in the particular case" and "is largely an issue of control." *Keeton v. Time Warner Cable*, 2011 WL 2618926, at *3 (S.D. Ohio July 1, 2011). Whether one is an employer withing the meaning of the FLSA is a question of law. *U.S. Dept. of Labor v. Cole Enter., Inc.*, 62 F.3d 775, 778 (6th Cir. 1995).

While the Sixth Circuit has not articulated a test for identifying a joint employer for FLSA purposes, it has acknowledged the following four factors in determining "whether two companies are joint employers: the interrelation of operations between the companies, common management, centralized control of labor relations, and common ownership." *Keeton v. Time Warner Cable*, 2010 WL 2076813, at *2 (S.D. Ohio May 24, 2010) (citing *Int'l Longshoremen's Ass'n, AFL-CIO, Local Union No. 1937 v. Norfolk S. Corp.*, 927 F.2d 900, 902 (6th Cir. 1991) (quoting *Metro. Detroit Bricklayers Dist. Council v. J.E. Hoetger & Co.*, 672 F.2d 580, 584 (6th Cir. 1982))*; Sutton v. Cmty. Health Sys., Inc.*, 2017 WL 3611757, *3 (W.D. Tenn. Aug. 22, 2017); *Heard v. Nielson,* 2017 WL 2426683, at *3 (S.D. Ohio June 2, 2017). All four criteria need not be present. *Keeton,* 2011 WL 2618926, at *3. Ultimately, the goal is to determine whether an entity is an "employer" for the purposes of the FLSA the Court must consider the "economic reality" of the situation. *See Cole*, 62 F.3d at 778.

(5:17CV739)

Although not dispositive with respect to the FLSA, within the context of Title VII, the Sixth Circuit has also considered other potential factors in determining if an entity may be considered a joint employer: (1) exercise of the authority to hire, fire, and discipline; (2) control over pay and insurance; and (3) supervision. *See Sanford v. Main St. Baptist Church Manor, Inc.*, 327 F. App'x. 587, 594, (6th Cir. 2009) ("in the NLRB context" factors "such as exercise of authority to hire, fire, and discipline, control over pay and insurance, and supervision . . . can bear on whether an entity, which is not the formal employer, may be considered a joint employer"). Other districts courts in the Sixth Circuit have applied these factors. *See Parrott v. Marriott Inter., Inc.*, 2017 WL 3891805, *1 (E.D. Mich. Sept. 6, 2017); *Williams v. King Bee Delivery, LLC*, 199 F. Supp. 3d 1175, 1180-1181 (E.D. Ky. 2016); *Bacon v. Subway Sandwiches & Salads LLC*, 2015 WL 729632, at *4 (E.D. Tenn. Feb. 19, 2015); *Politron v. Worldwide Domestic Servs., LLC*, 2011 WL 1883116, *1 – 3 (M.D. Tenn. May 17, 2011).

The Court finds the factors under *Norfolk* and *Sanford* instructive and applies those factors in deciding whether Absolute is a joint employer of Plaintiff.

**1. The *Norfolk* Factors**

In applying the Sixth Circuit's four-factor test, the Court first considers whether common management or common ownership exists between Defendants Absolute and Trax. *See Norfolk*, 927 F.2d at 903. It is undisputed that Absolute provided medical products and employed Trax, as its delivery service, to deliver products to Absolute customers. ECF Nos. 29 at PageID#: 177; 29-9; 40-1 at PageID#:1191 – 92. Neither entity holds an ownership stake in the other or leadership positions within the other entity. ECF Nos. 29 at PageID#:188; 29-10 at PageID#: 382,¶ 8 (Jerry Liliestedt, Vice President of Absolute, Declaration stating that "Absolute and Trax

6

(5:17CV739)

are unrelated companies and do not share any common ownership or management"); 29-1 at PageID#: 255 (Plaintiff testified that he understood Absolute to be Trax's customer). Furthermore, Plaintiff does not make a claim that any Trax official was a part of the formal management structure governing Absolute Pharmacy or vice versa. In addition, the MTA, entered into by Absolute and Trax, provides, in part:

> "[Trax] shall remain an independent contractor, and nothing herein shall be construed to create a partnership or joint venture between [Absolute] and [Trax]. Each party shall be responsible for wages, hours and conditions of employment of its personnel during the term of and under this Agreement. Nothing herein shall be construed as implying that employees of one party are employees of the other."

ECF No. 29-9; ECF No. 30 at PageID#: 384.

The Sixth Circuit has held that, "while this contract language is not controlling, it is persuasive evidence of the parties' intentions and of their understanding of their contractual arrangement." Norfolk, 927 F.2d at 903. The undisputed facts indicate that Defendants Absolute and Trax's interactions were limited to the terms of the MTA; that the Defendants merely engaged in "arm's-length dealings." See id. Plaintiff has not shown that Defendants Absolute and Trax had common management or common ownership.[2]

---

[2] Plaintiff's Response urges: "the test to be applied in determining whether a person is an 'employer' responsible for FLSA obligations is one of 'economic reality.' U.S. Dept. of Labor v. Cole Enter., Inc., 62 F.3d 775, 778 (6th Cir. 1995)". ECF No. 40-1 at PageID#: 1196. As discussed already and going forward, it is apparent that when the facts are examined with this goal in mind, Plaintiff has failed to establish, under the economic reality of the situation, that he was jointly employment. It is undisputed that neither Absolute nor Trax held a "significant ownership interest" in the other business or shared a corporate officer with the other business, or met other indicia required in *Cole*. See Cole, 62 F.3d at 778. Plaintiff's argument also fails in this regard.

7

(5:17CV739)

Also, Plaintiff has not shown that the interactions between Absolute and Trax "were substantially interrelated beyond the extent necessary to the performance of their basic contractual duties." Norfolk, 927 F.2d at 903. Plaintiff contends that because Absolute imposed a delivery schedule, as specified in the MTA; implemented daily route release times — the time at which Absolute has the various route delivery packages ready for pick up at its North Canton facility by the drivers; required that Plaintiff adhere to a certain dress code — black pants and black collard shirt, and wear an identification badge; made isolated complaints as to Plaintiff's dress and timeliness in delivering products to Absolute's customers; allowed Plaintiff access to a secured room in its facility; and, provided Plaintiff with equipment, such as route sheets, that needed to be signed to evidence delivery to Absolute's customers, and medication totes — bearing Absolute's logo, requires that Absolute be classified as his joint employer. *See* ECF No. 40-1 at PageID#:1999 — 1200.

The Sixth Circuit, however, has found that, facts more extensive than those in the case at bar, in which the entity defendants were alleged to be joint employers, did not rise to the level of establishing interrelations between two entities. *See* Norfolk, 927 F.2d at 903 (explaining that facts in which the entity defendant "pays a management fee" to the alleged joint employer, "pays all the operating costs," "was fully advised as to the labor negotiations" of the alleged joint employer," "conducted time studies," "made recommendations as to reduction in employee numbers," and "had input on manning schedules and on overtime and holiday pay," did not support a determination that the entity defendants were joint employers). *See*, *e.g.*, Teamsters Local Union No. 89 v. Kroger Co., 921 F.Supp.2d 733, 743 (W.D. Ky. 2013) (holding that the entity defendant's mere involvement in the day-to-day operations with a delivery service

8

(5:17CV739)

company it contracted with to provide transportation services, was not enough to show "interrelations of operations" without additional evidence that the entity defendant had control over the terms and conditions of employment, such as hiring, firing, discipline, or negotiating authority).

In the present case, the Court is unpersuaded that Absolute's isolated statements concerning Plaintiff's failure to adhere to the dress code and timely deliver its products is proof of interrelated operations.[3]  *Se*e ECF Nos. 29 at PageID#: 185; 29-1 at PageID#: 233, 241. Absolute's limited input on these matters concerning the delivery routes of its products being sent to its customers, and the presentation and timeliness of these deliveries, merely served as a way to ensure that its products were delivered in a manner that was satisfactory to its customers. *See*, *e.g.*, *Kroger*, 921 F. Supp. 2d at 745 (noting that the entity defendant "acted to oversee its contractor's performance to ensure consistency among its warehouses, and to see that its products meet its standard   which further supports [the entity defendant's] identity as . . . a customer, not a joint employer.").  *See also Clinton's Ditch Co-op Co., Inc. v. N.L.R.B.*, 778 F.2d 132, 138 (2d Cir. 1985) (finding the fact that a company complains to a contractor about problems that the company's customers had with the contractor's drivers, and that the company "expected appropriate action to be taken" against the contractor's driver did not demonstrate joint employment).  Absolute's conduct did not go beyond its basic contractual duties under the MTA.

---

[3] While none of these complaints resulted in disciplinary action, Plaintiff claims the temporal proximity to discharge is significant.  Perhaps, but not indicative of joint employment or control as much as customer dissatisfaction.

(5:17CV739)

Also, in providing totes bearing Absolute's logo and requiring that the dress code be adhered to, Absolute gave the necessary assurance to its customers that they were indeed receiving products from Absolute. Furthermore, Plaintiff's access to Absolute's North Canton facility, limited to a designated staging area within the facility, does not demonstrate that the two entities were "substantially interrelated." Absolute provided the designated staging area for one purpose: the pick up and return of Absolute's products, and did not allow Plaintiff, or any other Trax drivers, access to the rest of its facility. ECF Nos. 40-1 at PageID#: 1199; 29-2 at PageID#: 279 (Daniel Branch, Trax Lead Driver, testified that Trax drivers were given "a keycard that gets them into a limited portion of the facility to get the stuff that they need to deliver."). Accordingly, such conduct does not go beyond Trax and Absolute's contractual obligations. ECF No. 40-1 at PageID:# 1194.

It is also undisputed that the schedule on the route sheets were "not adjusted based upon the release time," and were not strictly adhered. ECF No. 29 at PageID#: 193. *See* ECF Nos. 29-2 at PageID#: 277 (Branch testified that "there is a suggested time but it is nothing that's set in stone."); 29-3 at PageID#: 298 (Liliestedt testified that "the route sheet does list a suggested approximate time, but it's really often not relevant"). These undisputed facts do not support a determination that the operations of Absolute and Trax were interrelated to constitute joint employment.

With respect to labor relations, evidence that Absolute had control over the terms and conditions of employment, such as hiring, firing, discipline, or negotiating authority does not support a theory of joint employment. *See Norfolk*, 927 F.2d at 903. The undisputed facts demonstrate that, Trax was solely responsible for hiring and terminating Plaintiff. *See* ECF Nos.

10

(5:17CV739)

29-1 at PageID#: 253 (Plaintiff testified that he never received new hire paperwork or any employment paperwork for Absolute); 29-4 at PageID#: 322–23 (O'Neal, Trax's managing consultant, testified that information collected from drivers, including background information, is not shared with Absolute); 29-10 at PageID#: 382, ¶ 10 (Liliestedt declared that "Absolute was completely uninvolved in the process or decision of Trax to contract with [Plaintiff]").

Furthermore, Trax was responsible for supervising Plaintiff's labor and working conditions, that included directing and providing Plaintiff with instructions on his daily delivery routes. ECF Nos. 29 2 at PageID#: 283–84 (Branch testimony that Trax is strictly in charge of communicating the release times to the drivers, including Plaintiff); *Id.* at PageID#: 291 (Branch testimony that Absolute never involved itself or made input in which driver would be assigned to their routes); 29-4 at PageID#: 323 (O'Neal testified that Trax clients and customers do not have a right to refuse a particular driver to handle one of their routes); 29-1 at PageID#: 243 (Plaintiff testified that Trax told Plaintiff the times he was required to be at the pharmacy); *Id.* at PageID#: 231 (Plaintiff testimony that a "Trax person" was "our supervisor really as far as I saw it."); *Id.* at PageID#: 246 (Plaintiff's statements indicating that he did not consider Absolute to be his direct supervisor). Trax served as the entity to whom Plaintiff was required to report to, and Plaintiff did so regarding employment matters, including the incident that led to his employment termination. ECF No. 29-2 at PageID#: 287–88 (Branch testified that Plaintiff called him to explain the circumstances of his delivery at one of the facilities, that ultimately led to his employment termination); 29-1 at PageID#: 231 (Plaintiff testified that regarding "any issue, 'he would contact'" his Trax supervisor).

11

(5:17CV739)

The undisputed facts also indicate that Trax was exclusively responsible for issuing disciplinary action against Plaintiff. ECF Nos. 40-1 at PageID#: 1199 ("Absolute reported driver issues to Trax, regarding its customer's issues with delivery, which in turn took corrective action."); 29-4 at PageID#: 329 (O'Neal testimony that Trax alone made the determination that it would take corrective action against Plaintiff regarding the incident that led to his termination); 29-2 at PageID#: 292 93 (Branch testified that he was directed by Trax management to terminate Plaintiff's employment).

As shown above, Plaintiff has failed to show that Absolute is a joint employer under *Norfolk*.

### 2. The *Sanford* Factors

Because the Court has found that Plaintiff has failed to satisfy factors regarding whether Absolute exercised authority to: (1) hire, fire, and discipline; or (2) direct or supervise Plaintiff, which requires a substantially similar analysis under *Norfolk*, the Court need not address factors one and three under *Sanford*. *See Sanford*, 449 F. App'x at 492 (In assessing whether such control exists, the Sixth Circuit has considered the ability to: (1) hire, fire, and discipline; (2) to affect compensation and benefits; and (3) to direct and supervise performance).

As to control over compensation, the undisputed facts demonstrate that, Defendant Trax, not Absolute, had the exclusive authority to set rates and methods of compensation for Plaintiff. *See* ECF Nos. 29-9; 29 at PageID#: 192 ("The MTA provides that Trax, not Absolute, was responsible for [Plaintiff's] wages, hours and conditions of employment (per stipulation)"); 29-10 at PageID#: 383, ¶ 14 (Lilistedt Declaration stating that "Absolute never paid [Plaintiff] or had any input into how or how much Trax paid him."). Plaintiff admits that Absolute had no

12

(5:17CV739)

input into his compensation, which was determined and paid by Trax. ECF Nos. 29 at PageID#: 192; 29-1 at PageID#: 266 (Plaintiff's testified he did not have knowledge that Absolute had any involvement in determining how much he was paid); *see*, *e.g.*, *Politron*, 2011 WL 1883116, at *3 (finding that a joint employment relationship did not exist when the defendant had no control over the plaintiffs' wages, no authority to hire, fire or discipline them). Accordingly, under *Sanford*, Absolute is not a joint employer of Plaintiff.

In sum, Plaintiff has failed to establish that Absolute is liable for FLSA violations under either joint employer tests.

After close scrutiny, the Court finds that Absolute is not a joint employer of Plaintiff. Therefore, Plaintiff's FLSA and associated state law claims, under Ohio's minimum wage and overtime compensation provisions, against Absolute fail as a matter of law. *See Heard,* 2017 WL 2426683, at *2 (Ohio law incorporates the FLSA's definitions, standards, and principles for its minimum wage and overtimes compensations provisions. Ohio Const. Art. II, § 34a; Ohio Rev. Code §§ 4111.02 .03. Accordingly, the claims may be analyzed together. *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 501 (6th Cir. 2007) (explaining that the Ohio statute expressly incorporates the standards and principles found in the FLSA. *See* Ohio Rev. Code. § 4111.03(A) ("An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek, in the manner and methods provided in and subject to the exemptions of . . . the 'Fair Labor Standards Act of 1938'"))).

(5:17CV739)

## IV.  Conclusion

For the reasons stated above, summary judgment is granted in favor of Defendant Absolute Pharmacy, Inc. and against Plaintiff on all claims asserted against Defendant Absolute Pharmacy, Inc. ([ECF No. 29](#)).

IT IS SO ORDERED.

   June 29, 2018                                  */s/ Benita Y. Pearson*
Date                                              Benita Y. Pearson
                                                    United States District Judge